UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| RICHARD TRAVIS MORROW, | ) | |
| | ) | Civil No. 09-106-GFVT-EBA |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| JOSEPH MEKO, Warden, | ) | **ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Petitioner Richard Travis Morrow's pro se Petition for a Writ of Habeas Corpus [R. 1] pursuant to 28 U.S.C. § 2254.  Consistent with local practice, this matter was referred to Magistrate Judge Edward B. Atkins for initial screening and preparation of a report and recommendation.  Judge Atkins filed his Report and Recommendation on June 30, 2010, in which he recommends that Morrow's petition be denied. [R. 17 at 15].

Morrow filed timely objections to the Recommendation and specifically objects to three of Judge Atkins' findings. [R. 19].  First, he objects to Judge Atkin's conclusion that his trial counsel was not ineffective in his investigation of and decision not to call an alibi witness.  He also disputes the finding that his attorney's decision not employ an independent expert to examine certain DNA evidence did not amount to ineffective assistance.  Finally, he objects to Judge Atkins' determination that the state trial court's denial of his *Batson* challenge during voir dire was not unreasonable or contrary to clearly established federal law.  These objections trigger this Court's obligation to conduct a *de novo* review.  *See* 28 U.S.C. § 636(b)(1)(c).  The Court has satisfied that duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules.  For the

following reasons, Morrow's objections will be OVERRULED.

I

On December 4, 2002, an armed man in a camouflage ski mask robbed the Science Hill Drug Store in Pulaski County, Kentucky, and fled the scene in a maroon, late model Ford Explorer. Richard Travis Morrow was indicted for the offense and was found guilty after a jury trial in Pulaski Circuit Court and was sentenced to thirteen years of imprisonment. The evidence at trial showed that around 11:45 on the morning of the robbery, Morrow purchased a camouflage ski mask from Paul's Discount Store near Science Hill; this transaction was captured on the store's surveillance tape. The store's owner found Morrow's behavior suspicious and called 911 to report the make, model, and plate numbers of the vehicle Morrow was driving – a maroon Ford Explorer that Morrow had borrowed from his friend Larry Burdine. The pharmacy was robbed around 12:30, and the assailant took several bottles of OxyContin pills. A responding police officer "[got] a good look at the driver" and pursued a dark-colored Ford Explorer as it fled the scene. [R. 8-12 at 28]. The officer, however, abandoned the pursuit after receiving a call that the perpetrator had fled in a different direction. Around 1:30, Morrow pulled into the same shopping center in the maroon Explorer, with Billie Jean, Larry Burdine's daughter, in the passenger seat. After being stopped and questioned by police, Morrow was arrested, though he stated that he had been at Burdine's residence all day and had nothing to do with the robbery. Clothing matching that worn by the robber, as well as an identical ski mask, was found beneath a nearby porch, and a hair sample from the mask was tested, although that test ultimately proved inconclusive. The OxyContin pills stolen in the robbery were later found behind the shopping center.

Judge Atkins' Recommended Disposition accurately sets forth a more detailed account of the factual and procedural background of the case and the applicable standard of review for

granting habeas relief pursuant to § 2254(d). Except for what the Court supplements in its discussion below, the Court incorporates his discussion of the record and the standard of review into this Order.

II

A

Two of Morrow's objections concern ineffective assistance of counsel claims. The Magistrate and the Kentucky state courts each applied the proper standard under federal law set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant claiming ineffective assistance of counsel to show, first, that his counsel's performance was deficient by overcoming "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id*. at 689, and second, to demonstrate prejudice resulting from his counsel's errors. *Id*. at 694.

Morrow objects to the Magistrate's conclusion concerning his claim that his counsel failed to investigate and call Billie Jean Burdine as an alibi witness. Billie Jean, the daughter of Morrow's friend Larry Burdine and then a sixteen-year-old high-school student, had returned home from school early on the day of the robbery. Morrow argues that she could have corroborated his alibi that he was at the Burdine's trailer at the time of the crime. [R. 17 at 10].

Morrow insists, first, that his attorney failed to investigate his alibi or interview Billie Jean. The trial court found that Morrow had not produced any evidence showing that his attorney had failed to conduct a pre-trial interview. The court also pointed out that, in his opening statement, Morrow's attorney referenced the fact that Billie Jean was in the vehicle with Morrow on the day in question. This, the state court reasoned, demonstrated that counsel had not failed to

investigate, but was aware of Billie Jean's involvement. [R. 8-27 at 3-4]. The Kentucky Court of Appeals, [R. 9-30 at 7], and the Magistrate agreed, [R. 17 at 5].

A lawyer has a duty under *Strickland* to "investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (citations omitted). "The focus in failure-to-investigate claims . . . is the reasonableness of the investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010) (citing *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)). When assessing the reasonableness of counsel's pre-trial investigation, a court considers "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 at 527. The Sixth Circuit has noted that, in most failure-to-investigate cases, the record demonstrates that "counsel has either completely failed to investigate a potential witness . . . or the record shows that had the attorney taken some investigatory steps he or she would have discovered additional crucial information." *Hale v. Davis*, 512 Fed. App'x 516 (2013) (unreported) (citations omitted) (collecting cases). The burden is on the petitioner to demonstrate that there was "no reasonable basis for the state court to deny relief." *See Smith v. Crowley*, 36 Fed. App'x 754, 755 (unreported) (citing *Strickland*, 466 U.S. at 697); 28 U.S.C. § 2254.

Morrow has not shown that his attorney failed to speak with Billie Jean Burdine, nor has he shown that speaking with Billie Jean would have led to "additional crucial information." Counsel was clearly aware of her role in the events in question. As the state courts and the Magistrate emphasized, Morrow's counsel referred to Billie Jean's presence in the car in his opening statement and, for that matter, several times throughout the trial. [*See, e.g.*, R. 8-10 at 26; R. 8-15 at 5, 27; R. 8-20 at 3]. While it is not clear what information Billie Jean herself might

4

have provided, Morrow's counsel elicited details about Billie Jean's whereabouts on the day in question from several witnesses, including her father Larry Burdine. [R. 8-15 at 27]. Neither Morrow nor the record establishes what new information Billie Jean could have provided to counsel. *Accord Hale*, 512 Fed. App'x at 521(where counsel was aware of potential alibi and what she would testify if called as a witness, no unreasonable failure to investigate since petitioner had failed to establish any additional information that counsel would have learned from the witness).

     Even if counsel's investigation were unreasonable, however, Morrow has not established that his trial was prejudiced as a result. The courts below did not conduct an evidentiary hearing to establish whether counsel failed to investigate Billie Jean as a potential alibi witness. However, even in the absence of an evidentiary hearing, "the claim of ineffective assistance can be addressed by examining whether the alleged deficient performance of counsel casts doubt on the outcome of the trial." *Smith*, 36 Fed. App'x at 756 (citing *Strickland*, 466 U.S. at 697). In assessing the prejudice from counsel's errors, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696. The Kentucky Court of Appeals and the Magistrate determined that the overwhelming evidence against Morrow precluded any finding of prejudice. As the Kentucky Court of Appeals noted, the evidence at trial showed that about an hour before the robbery, Morrow was captured on videotape purchasing camouflage ski mask at a nearby store, dressed exactly the same as the person who committed the offense, and he was observed leaving the store in a dark colored Ford Explorer. [*E.g*., R. 8-11 at 20]. This vehicle was spotted behind the drugstore just before the robbery took place, [R. 8-12 at 18], and Morrow was also identified by a police officer leaving the scene of the robbery in a dark-colored Ford Explorer

with a matching license plate number. [R. 8-12 at 28]. Morrow has not established a reasonable probability that, but for counsel's alleged deficiency, the result of his trial would have been different. Given the weight of the evidence of Morrow's guilt, the state courts' determination that Morrow failed to demonstrate ineffective assistance on this ground was not unreasonable. *Accord Smith*, 36 Fed. App'x at 756 (holding that petitioner had failed to demonstrate prejudice from an alleged failure to investigate an alibi witness where multiple eyewitnesses consistently described the petitioner's age, build, height, clothing, and hairstyle, and where one witness testified that the petitioner had admitted his guilt to him).

Morrow also claims that his attorney's decision not to call Billie Jean as an alibi witness was not a sound trial strategy and denied him of a fair trial. "[W]hether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy that merit *Strickland* deference." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012). The Supreme Court noted in *Strickland* that this kind of "strategic choice[] made after thorough investigation of law and facts relevant to plausible options [is] virtually unchallengeable." *Strickland*, 466 U.S. at 690.

The Kentucky Court of Appeals found that "[c]ounsel obviously made a strategic decision concerning what defense would be most effective." [R. 9-30 at 8]. It noted elsewhere in its decision that, "in view of the evidence against [Morrow], counsel's trial strategy [i.e., the alternative perpetrator defense] was at least superior to the alibi defense." [R. 9-30 at 9]. The Magistrate Judge agreed with this assessment. [R. 17 at 6, 8].

There is, indeed, ample support that counsel's decision to pursue the alternative perpetrator theory – rather than calling Billie Jean as an alibi witness – was a reasonable strategic decision. Morrow's counsel emphasized that the dark-colored Ford Explorer was in the custody

6

and control of Larry Burdine. [R. 8-15 at 25-26; R. 8-20 at 3-5]. To highlight the difficulty of accurately identifying a person who is wearing a ski mask, counsel asked Burdine to try on the mask to demonstrate that Burdine could just as easily have been the person beneath it during the robbery. [R. 8-15 at 31, R. 8-20 at 8]. He also noted that at least one of the 911 calls described the vehicle in question as green in color – not maroon like Burdine's SUV. [R. 8-17 at 24]. Moreover, as the Kentucky Court of Appeals put it, there was "clear evidence showing that Morrow was not at the Burdine home during the time he now claims he was." [R. 9-30 at 37]. The overwhelming evidence – that Morrow had purchased a ski mask, was wearing the same clothes as the perpetrator, and was identified by a police officer as the driver of the dark Ford Explorer at the scene of the crime – undermines the efficacy of his claimed alibi defense. Although it is possible that calling Billie Jean to the stand might have been helpful, there was a reasonable basis supporting counsel's decision not to call her.

The main case cited by Morrow does not change this conclusion. In *Holland v. Commonwealth*, 679 S.W.2d 832 (Ky. Ct. App. 1984), the Kentucky Court of Appeals found ineffective assistance where counsel had failed to subpoena alibi witnesses that were integral to the sole defense raised at trial. Here, on the contrary, counsel diligently pursued a distinct defense theory that did not require calling, much less securing, Billie Jean's appearance.

It cannot be said that "it was an unreasonable application of *Strickland* for the state court to find that [Morrow] failed to rebut the presumption of reasonableness with respect to his attorney's decision [not to call an alibi witness]." *English*, 602 F.3d 714, 726 (6th Cir. 2010). Morrow has not established habeas relief on this ground.

7

B

Morrow's next objection relates to the inconclusive test on a strand of hair found in the recovered ski mask. The state's expert testing of that hair was ultimately inconclusive. Morrow contends that, in light of that inconclusive test, his counsel should have employed an independent expert witness to examine the strand of hair for DNA testing and comparison. He objects to the Magistrate's conclusion that his counsel's failure to do so did not constitute ineffective assistance.

The state trial court and appellate court rejected this claim and found that, contrary to Morrow's argument, his counsel had effectively emphasized that the Commonwealth's failure to find a conclusive match cast doubt on Morrow's involvement in the crime. [R. 9-30 at 8]. As the Magistrate explained, counsel made good use of this evidence during cross-examination of the officer handling the evidence, as well as in his closing argument. Counsel got the officer to admit that there was no evidence of a conclusive match to Morrow:

> Q: As far as the ski mask, as far as you know today, no hair that was recovered in that ski mask could be positively or even – they didn't have any way to point out that that was the hair that come [sic] from his head.
>
> A: The hair was not matched, no.

[R. 8-15 at 8]. In closing argument, counsel also highlighted the fact that a matched strand of hair could have been "the most compelling important piece of evidence . . . that would have decided this case," and argued that the state initiated the test months after Morrow's indictment because "they have a doubt." [R. 8-20 at 6-7].

Although Morrow argues that "mere cross examination is not enough," [R. 19 at 4], his attorney's use of the Commonwealth's failure to produce evidence of a conclusive match was both reasonable and effective. Morrow has not shown that his counsel's use of the inconclusive hair matching test was objectively unreasonable, such that an independent expert witness would

8

have been necessary.  He has therefore failed to rebut the "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 446 U.S. at 689.  The state courts' decision to deny habeas relief on this ground was not unreasonable.

C

Finally, Morrow objects to the Magistrate's conclusion that the trial court's denial of his Batson challenge was constitutionally sound.  During voir dire, Commonwealth used a peremptory strike to exclude Bobby Napier, the only African-American male in the jury pool.  Morrow's attorney raised a *Batson* challenge.  [R. 8-10 at 19].  The prosecutor offered a race-neutral basis for the strike, defense counsel objected to that reasoning on one ground, and the trial judge issued its ruling denying the challenge:

> HON. DAVID DALTON [Assistant Commonwealth's Attorney]:  Yes, sir, I struck Mr. Napier, the reason being that he was on the original Catron panel.[1] During the entire eight hours that we were there swearing in the jury, interviewing the jury, he was unattentive, chewing on a straw and about fell asleep, and that's noted by three people at my office, so that would be my non-racial reason for striking Mr. Napier, my own personal observations of him in prior voir dire.
>
> HON. ROBERT STEVENS [Co-counsel for Defendant]:  Judge, that was not raised during voir dire. There was [sic] no questions regarding attention span and ability to hold out during the trial.
>
> THE COURT:  Previous knowledge during voir dire appears to be a reason for neutral striking of this juror. I don't see any prejudice in striking him and would indicate on the record that the [C]ommonwealth has shown through their argument here that there was neutral striking of that juror.

[*Id*.]

Under *Batson v. Kentucky*, 476 U.S. 79 (1986), purposeful racial discrimination in the use of peremptory strikes during voir dire violates the Equal Protection Clause.  When such a strike is challenged, *Batson* requires a court to engage in a three-step analysis:

---

[1] "Catron" refers to another criminal trial that had been recently conducted in Pulaski Circuit Court and apparently involved the same prosecutor. [*See* R. 8-9 at 7-8].

9

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003) (hereinafter *Miller-El I*) (citing *Batson*, 476 U.S. at 96-98).  At step three of the *Batson* analysis, "the critical question . . . is the persuasiveness of the prosecutor's justification for his peremptory strike." *Miller-El I*, 537 U.S. at 339.  The Supreme Court has explained that "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Id.*  In making that determination, a judge is to "tak[e] into account all possible explanatory factors in the particular case," *Thaler v. Haynes*, 559 U.S. 43, 48 (2010) (citing *Batson*, 476 U.S. at 95), and the prosecutor's "credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El I*, 537 U.S. at 339.

Morrow argues that the trial court's analysis at step three was unreasonable and contrary to federal law in two ways.  First, he contends that the prosecutor's reason was based on conduct in a prior voir dire that was not relevant to or demonstrated in his case.  Second, Morrow argues that the prosecutor's reason was pretextual because he did not ask any questions relating to attentiveness during voir dire.

Courts agree that non-verbal communication, and inattentive behavior in particular, can form a proper race-neutral basis for a peremptory strike. *E.g.*, *Stevens v. Epps*, 618 F.3d 489, 501 (5th Cir. 2010) ("Inattentiveness is a race-neutral reason."); *United States v. Jones*, 224 F.3d 621, 624 (7th Cir. 2000); *United States v. Cordoba-Mosquera*, 212 F.3d 1194, 1197 (11th Cir. 2000) (citing *United States v. Diaz*, 26 F.3d 1533, 1542 (11th Cir. 1994)); *see Thaler*, 559 U.S. 43.

Whether inattentiveness demonstrated in a *prior* voir dire can form a race-neutral basis has apparently not yet been expressly decided by the Supreme Court. The Court's recent decision in *Thaler v. Haynes*, however, sheds light on the issue. In that case, the Court made clear that neither *Batson* nor *Snyder v. Louisiana*, 552 U.S. 472 (2008), "[held] that a demeanor-based explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor." *Thaler*, 559 U.S. at 48. In other words, the Supreme Court has never established a categorical rule that a trial judge must observe the non-verbal behavior that forms the basis of a prosecutor's justification in order to credit that justification as race-neutral. *See id.* at 49 ("These observations do not suggest that, in the absence of a personal recollection of the juror's demeanor, the judge could not have accepted the prosecutor's explanation."). The prosecutor's justification in *Thaler* arose from a prospective juror's non-verbal cues during individual questioning, for which the presiding trial judge was not present. *Id.* at 44-45; *see also Haynes v. Quarterman*, 561 F.3d 535 (5th Cir. 2009), *rev'd sub nom.*, *Thaler v. Haynes*, 559 U.S. 42 (explaining that a different judge presided over the individual questioning stage during the case below). Analogously, the prosecutor's justification in Morrow's case arose from non-verbal conduct by the same prospective juror in a prior voir dire proceeding, at which the *Morrow* trial court judge was not present.

    A petitioner cannot obtain federal habeas relief unless he can demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The *Thaler* Court explained that "a legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court." *Thaler*, 559 U.S. at 47. Morrow has not

11

identified,[2] and the Court cannot find, any "clearly established" federal law prohibiting a court from considering a venire's past conduct in prior voir dire proceedings. Rather, the Supreme Court's holding in *Thaler* on very similar facts persuades the Court that the state trial court's acceptance of the prosecutor's justification – even where the conduct in question occurred in a prior voir dire proceeding – was not contrary to clearly established law under *Batson*. It cannot be said that the state trial court's decision was unreasonable on this ground.

In his objection, Morrow reiterates his counsel's challenge to the prosecutor's justification for striking Napier: the prosecution had elicited no questions regarding attentiveness or physical endurance during potentially lengthy sessions of the trial. The record does not reflect any questioning on this point, and, for that matter, the cold transcript before the Court does not reflect whether Napier exhibited the same inattentive behavior in Morrow's case. Even if the Court were to accept, as some courts have, that lack of meaningful voir dire examination about the conduct which forms the basis of a strike can constitute *some* evidence of pretext, *see, e.g.*, *Reed*, 555 F.3d 364, 376 (5th Cir. 2009), this is not particularly strong in light of the fact that the trial court implicitly credited the prosecutor's reasoning. *Accord Stevens*, 618 F. 3d at 497-98 (holding that, despite the fact that the prosecutor had posed no questions regarding inattentiveness during voir dire, the petitioner could not show purposeful discrimination because the trial court judge had found the prosecutor's reason to be credible and must be accorded deference). Referring to the prosecutor's inattentiveness argument, the judge stated that "the [C]ommonwealth has shown through their argument here that there was neutral striking of that juror." [R. 8-10 at 19]. The Supreme Court has emphasized that this kind of credibility determination "on the ultimate

---

[2] Morrow principally relies on *Elem v. Purkett*, 25 F.3d 679 (8th Cir. 1994) for the proposition that a prosecutor's race-neutral explanation must literally occur in the particular case to be tried – but as he himself observes, that decision was reversed and remanded by the Supreme Court. *Purkett v. Elem*, 514 U.S. 765 (1995); [R. 19 at 6].

question of discriminatory intent represents a finding of fact of the sort accorded great deference . . . [that] will not be overturned unless clearly erroneous." *Miller-El I*, 537 U.S. at 340. The prosecutor's reason was not the kind of "implausible or fantastic justification" that might more typically be found to be a pretext for purposeful discrimination. Instead, inattentiveness is a well-accepted race-neutral basis for a strike, *e.g.*, *Stevens*, 618 F.3d at 501, and the explanation is both reasonable and probable. *See Miller-El I*, 537 U.S. at 340.

Moreover, absent clear and convincing evidence to the contrary, a federal habeas court is bound by the factual determinations of state courts – including a trial court's credibility determination. *Id.* (citing 28 U.S.C. § 2254(e)(1)). A decision adjudicated on the merits in a state court and based on that factual determination – including a decision on the ultimate question of discriminatory intent – "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented at the state-court proceeding." *Id.* (citing 28 U.S.C. § 2254(d)). Morrow has not shown purposeful discrimination in striking Napier, and he has not shown that the state court's decision on this point was objectively unreasonable.

As noted above, Morrow has also failed to show that the trial court's decision was contrary to clearly established federal law. Morrow cites a number of state court decisions setting forth factors to be considered at step three, including whether there was a lack of questioning on the prosecutor's cited reasoning – but those factors have not been "clearly established" as dispositive in a holding by the United States Supreme Court. *Thaler*, 559 U.S. at 47. Morrow has not shown that the state trial court's conclusion was contrary to clearly established federal law or objectively unreasonable. This ground for habeas relief also fails.

### III

In conclusion, after reviewing *de novo* the entire record, as well as the relevant case law

and statutory authority, the Court is in agreement with Judge Atkins' analysis of Morrow's three claims that are the subject of his objections, as well as his other claims regarding ineffective assistance of counsel on other grounds and the trial court's denial of defense counsel's motion to strike two jurors for cause.  The Court agrees with the Magistrate's conclusion that Morrow failed to satisfy the *Strickland* standard on any of the claims presented in his habeas petition, and that the disputed voir dire decisions by the trial court judge were fairly supported by the evidence in the record.

The Court also denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) as to each issue asserted.  Under Rule 11 of the Federal Rules Governing § 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . ."  Rules Governing Section 2254 Proceedings, Rule 11.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  As set forth by the United States Supreme Court, this standard requires the petitioner to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Under this standard, the Court believes that this Order, which adopts and incorporates by reference the Magistrate Judge's recommended disposition, is not debatable enough to issue a certificate of appealability. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.  The Petitioner's Objections to the Magistrate's Report and Recommendation [R. 19] are **OVERRULED**;

2.  The Magistrate Judge's Report and Recommendation [**R. 17**] is **ADOPTED** as and for the opinion of this Court;

      3.      The Petitioner's § 2254 Petition [**R. 1**] in is **DISMISSED WITH PREJUDICE**;

      4.      A Certificate of Appealability is **DENIED** as to all issues raised by Petitioner; and

      5.      **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 21st day of April, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge